# EXHIBIT A



1  Devin Sreecharana, Esq. (AZ Bar No. 029057)
   **MAY, POTENZA, BARAN & GILLESPIE, P.C.**
2  Chase Tower, Suite 2200
   201 N. Central Avenue
3  Phoenix, AZ 85004-0608
   Telephone: (602)252-1900
4  Facsimile: (602)252-1114
   E-mail: devin@maypotenza.com
5
6  Attorney for Plaintiffs



MAY 0 9 2013

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

7          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8              IN AND FOR THE COUNTY OF MARICOPA

9  ROMEO FILIP, a married man, BATTLE          Case No.  CV2013-007123
   FOAM, LLC, an Arizona limited liability
10 company, and OUTLAW MINIATURES,             **VERIFIED COMPLAINT**
   LLC, an Arizona limited liability company,
11
12              Plaintiffs,
13
   vs.
14
15 NICOLAS HAYDEN and JANE DOE
   HAYDEN, husband and wife; DOE
16 INDIVIDUALS OR ENTITIES 1-10,
17
                Defendants.
18

19      Plaintiffs Romeo Filip ("Filip"), Battle Foam, LLC, an Arizona limited liability

20 company ("Battle Foam"), and Outlaw Miniatures LLC, an Arizona limited liability company

21 ("Outlaw Miniatures") (together with Filip and Battle Foam, collectively referred to as

22 "Plaintiffs"), for their complaint against Nicolas Hayden ("Defendant") and Jane Doe Hayden,

23 and  Doe Individuals or Entities 1-10 (collectively referred to as "Defendants"), allege as

24 follows:

25                 **JURISDICTION AND PARTIES**

26      1.     Filip is and was, at all times relevant hereto, a resident of Maricopa County,

27 Arizona.

28

                                    1

2.     Battle Foam is and was, at all times relevant hereto, an Arizona limited liability company.

3.     Outlaw Miniatures is and was, at all times relevant hereto, an Arizona limited liability company.

4.     Upon information and belief, Defendant and Jane Doe Hayden are husband and wife and were, at all time relevant hereto, residents of Contra Costa County, California.

5.     The marital community of Defendant and Jane Doe Hayden are liable for the actions of Defendant complained of herein because the actions were taken for and on behalf of the Hayden marital community.

6.     Defendants Doe Individuals and Entities 1-10 are persons or entities whose actual names are unknown to Plaintiff but who may have liability for the actions or events alleged in this lawsuit.  The true names of Doe Individuals and Entities 1-10 will be substituted as they become known through the course of discovery.

7.     The events and occurrences upon which this action is based arose in Maricopa County, Arizona.

8.     This Court has jurisdiction over the parties in this action.

**GENERAL ALLEGATIONS**

9.     Filip is the CEO of Battle Foam.

10.     Battle Foam specializes in manufacturing custom cut foam packaging for miniatures war-gaming figurines and weapons, medical equipment and many other applications.

11.     Battle Foam also manufactures custom transportation bags and containers.

12.     Battle Foam works directly with many figurine manufacturers in the miniature war-gaming industry to manufacture detailed products suited for their clientele.

13.     Offering such services as, design, product research, development, prototyping, warehousing, and logistics makes working with Battle Foam a valuable joint venture for these figurine manufacturers.

14.     Battle Foam lists its partners on the main page of its website.

2

15.     Battle Foam has established itself as the premier packaging company in this close-knit and competitive industry.

16.     Outlaw Miniatures is a company in its developmental stage.

17.     Outlaw Miniatures is an entity separate and apart from Battle Foam.

18.     Outlaw Miniatures intends to manufacture miniature war gaming figurines for the miniature war game entitled "Wild West Exodus."

19.     Outlaw Miniatures, via kickstarter.com, procures agreements with "kickstarter" investors with regard to raising capital for its business operations.

20.     "Kickstarter" investors' identities and the amount of their investments are made available on Outlaw Miniatures' kickstarter.com webpage.

21.     Defendant is a recognized blogger/commentator in the miniature war-gaming community.

22.     Defendant publishes online articles under the pen name "TastyTaste."

23.     Defendant owns the website and domain name: bloodofkittens.com.

24.     Defendant also controls a Facebook account under the profile name: Blood of Kittens.

25.     Upon information and belief, Defendant also owns and/or controls multiple other domain names and social media accounts.

26.     Defendant typically provides his readers with updates regarding current events in the miniature war-gaming community.

27.     Defendant attends miniature war-gaming tournaments and conventions across the country.

28.     Defendant has actual knowledge of the identities of Plaintiffs' current and potential customers, business partners, and business relationships.

29.     Defendant has direct access to a substantial amount of Plaintiffs' current and potential business partners and customers through publishing online articles and attending war-gaming tournaments and conventions.

30.     Over time, Defendant has attacked the business reputations of Filip and Battle Foam.

31.     On or about March 7, 2013, Defendant engaged in defamatory conduct by intentionally publishing false information about Filip and Battle Foam to third-parties with the intent of damaging the reputations of Filip and Battle Foam.

32.     Specifically, Defendant wrote and posted an online article entitled "Meat for Meta: Bad Battle Foam Practices" (the "Defamatory Article") on his website bloodofkittens.com. A true and correct copy of the Defamatory Article is attached hereto as **Exhibit A**.

33.     Defendant falsely accused Filip of physically and verbally threatening potential Battle Foam customers.

34.     Defendant falsely accused Filip of lying to current and potential Battle Foam customers.

35.     Defendant falsely accused Filip of lying to current and potential business partners.

36.     Defendant falsely accused Filip of consistently defaulting on agreements with current and potential business partners.

37.     Defendant falsely accused Battle Foam of lying to current and potential Battle Foam customers.

38.     Defendant published his false statements to an unknown amount of third-parties by posting the Defamatory Article online.

39.     Upon information and belief, Defendant published the Defamatory Article to, among other things, increase the number of visits to his website bloodofkittens.com because Defendant financially profits from each visit.

40.     The Defamatory Article falsely alleges or implies that Battle Foam has an operational or financial interest in Outlaw Miniatures and Wild West Exodus.

41.     The Defamatory Article attempts to dissuade potential customers and business partners from engaging in business with Outlaw Miniatures and purchasing Wild West Exodus

4

1    because of the alleged, unrelated bad business practices of Filip and Battle Foam.

2        42.    Defendant has actual knowledge of Outlaw Miniature's efforts to raise capital for

3    its developing business.

4        43.    By publishing his Defamatory Article and directly contacting potential and

5    current customers and business partners, Defendant caused potential "kickstarter" investors to

6    retract their investments in Outlaw Miniatures.

7        44.    Upon information and belief, many of Battle Foam's potential customers have

8    already decided to purchase products from Battle Foam's competitors in the industry.

9        45.    Plaintiffs have incurred damages as a result of Defendant's defamatory statements

10   and intentional misconduct, including, but not limited to:

11       •   loss of long-time and potential customers;

12       •   loss of third-party "kickstarter" investors;

13       •   loss of investment capital;

14       •   loss of good will in the miniature war-gaming community;

15       •   loss of a positive business reputation in the miniature war-gaming community;

16           and,

17       •   actual and potential partnerships with other manufacturers in the miniature war-

18           gaming industry.

19       46.    By letters dated April 1, 2013 and April 5, 2013, Filip and Battle Foam requested

20   that Defendant cease and desist from his tortious conduct. Filip and Battle Foam also provided

21   Defendant with a reasonable settlement offer.

22       47.    Defendant was aware that the Filip and Battle Foam were prepared to file suit

23   against him in this Court if he chose not to work with them to resolve the parties' dispute.

24       48.    Defendant ignored both the demand and offer articulated in the April 1, 2013 and

25   April 5, 2013 letters.

26       49.    Instead, Defendant filed an unlimited civil action in the Superior Court of the

27   State of California, Contra Costa County, MSC13-00674, seeking a declaration from the court

28   as to whether his statements in the Defamatory Article are defamatory (the "California

Lawsuit"). A true and correct copy of the Complaint filed in the California Lawsuit is attached hereto as **Exhibit B**.

50.     Upon information and belief, Defendant strategically filed the California Lawsuit as a defensive tactic to garner a forum more favorable to his own interests, cause Plaintiffs to expend fees and costs in defending against a suit in California, and delay Plaintiffs from taking appropriate legal action in Arizona.

51.     Upon information and belief, since filing the California Lawsuit, and while the parties were engaged in good faith settlement negotiations, Defendant again purposefully interfered with Plaintiffs' business operations and relationships.

52.     Upon information and belief, Defendant communicated, orally and via e-mail, with several current and potential customers and business partners of Plaintiffs in an attempt to weaken or terminate the Plaintiffs' business relationships and expectancies with those third-parties.

53.     On May 1, 2013, Defendant wrote and posted an online article entitled "Network News: Battlefoam v. Blood of Kittens" (the "California Lawsuit Article") on his website bloodofkittens.com, which article offers Defendant's summary of the parties' dispute. A true and correct copy of the California Lawsuit Article is attached hereto as **Exhibit C**.

54.     The California Lawsuit Article falsely accuses Battle Foam of taking legal action against Defendant.

55.     The California Lawsuit Article falsely implies that Battle Foam and Filip have not engaged in good faith settlement discussions with Defendant regarding the parties' dispute.

56.     Battle Foam and Filip have attempted to work with Defendant to amicably resolve this dispute for nearly two months prior to filing this action.

## COUNT I
### (Defamation)

57.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-56.

58.     Defendant made statements in the Defamatory Article about Filip and Battle Foam that were false.

59. Defendant made statements in the Defamatory Article about Filip and Battle Foam that were defamatory.

60. Defendant intentionally and knowingly published the false and defamatory statements about Filip and Battle Foam to a significantly large number of people on the Internet.

61. Defendant's false statements brought Filip and Battle Foam into disrepute, contempt, or ridicule, and impeached the honesty, integrity, virtue, or reputation of Filip and Battle Foam.

62. Defendant made his false statements with actual malice as he knew or had reason to know that the statements were false.

63. Defendant made the statements with actual malice as he acted with reckless disregard to whether the statements were false or not.

64. At a minimum, Defendant acted negligently when he made the false statements.

65. Defendant's conduct alleged herein was intentional, gross, wanton, malicious and oppressive. This conduct demonstrates spite, ill will or reckless indifference towards Filip and Battle Foam. Punitive damages are warranted.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

    A.    For damages in an amount to be determined at trial;

    B.    Pre- and post-judgment interest;

    C.    For punitive damages in an amount to be determined at trial;

    D.    In the event judgment is obtained by default, Plaintiffs' attorneys' fees in the sum of $5,000 and for court costs expended, plus interest accruing thereon at the statutory rate of 10% per annum from the date of judgment, until paid;

    E.    For such other and further relief as the Court may deem just and proper.

## COUNT II
### (False Light)

66. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-65.

67. The statements made by Defendant regarding the alleged bad faith actions and

misconduct and by Filip and Battle Foam gave publicity to the matter and placed Filip and Battle Foam before the public in a false light.

68.     These statements regarding alleged bad faith actions and misconduct by Filip and Battle Foam are highly offensive to a reasonable person.

69.     Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Filip and Battle Foam were placed.

70.     Defendant's conduct alleged herein was intentional, gross, wanton, malicious and oppressive. This conduct demonstrates spite, ill will or reckless indifference towards Filip and Battle Foam.  Punitive damages are warranted.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

        A.     For damages in an amount to be determined at trial;

        B.     Pre- and post-judgment interest;

        C.     For punitive damages in an amount to be determined at trial;

        D.     In the event judgment is obtained by default, Plaintiffs' attorneys' fees in the sum of $5,000 and for court costs expended, plus interest accruing thereon at the statutory rate of 10% per annum from the date of judgment, until paid;

        E.     For such other and further relief as the Court may deem just and proper.

## COUNT III
### (Intentional Interference with Contract)

71.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-70.

72.     Outlaw Miniatures, via kickstarter.com, procures agreements with third-party "kickstarter" investors with regard to raising capital.

73.     "Kickstarter" investors' identities and the amount of their investments are made available on Outlaw Miniatures' kickstarter.com webpage.

74.     Battle Foam lists its partners, with which it has a contractual relationship, on the main page of its website.

75.     Based on the foregoing, and as a result of Defendant's knowledge of Plaintiffs' business practices and current events within the miniature war-gaming industry, Defendant

8

1  knew about such contractual relationships.

2  76.  Defendant communicated, orally and via e-mail, with several current and

3  potential customers and business partners of both Battle Foam and Outlaw Miniatures in an

4  attempt to weaken or terminate their contractual relationships with Battle Foam and Outlaw

5  Miniatures.

6  77.  Defendant intentionally, without just cause or excuse, and with the willful intent

7  to injure Plaintiff, interfered with Plaintiffs' contractual relationships by falsely accusing the

8  Battle Foam and Filip of dishonesty and bad faith business practices, which caused a

9  termination of those relationships.

10  78.  Defendant's conduct was improper.

11  79.  Plaintiffs suffered damages caused by the termination of their contractual

12  relationships. Defendant's willful intent to injure Plaintiffs warrants punitive damages.

13  WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

14  A.  For damages in an amount to be determined at trial;

15  B.  Pre- and post-judgment interest;

16  C.  For punitive damages in an amount to be determined at trial;

17  D.  In the event judgment is obtained by default, Plaintiff's attorneys' fees in the

18  sum of $5,000 and for court costs expended, plus interest accruing thereon at the statutory rate of

19  10% per annum from the date of judgment, until paid;

20  E.  For such other and further relief as the Court may deem just and proper.

21
22  ## COUNT IV
(Intentional Interference with Business Expectancy)

23  80.  Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-79.

24  81.  Outlaw Miniatures, via kickstarter.com, procures contracts with third-party

25  "kickstarter" investors with regard to raising capital.

26  82.  Outlaw Miniatures had business relationships with the third-party "kickstarter"

27  investors and the reasonable expectation of continued business with them.

28

9

83.     Battle Foam lists its partners, with which it has a contractual relationship, on the main page of its website.

84.     Based on the foregoing, and as a result of Defendant's knowledge of Plaintiffs' business practices and current events within the miniature war-gaming industry, Defendant knew about these business relationships and expectancies.

85.     Battle Foam had business relationships with its customers and business partners and the reasonable expectation of continued business with them.

86.     Defendant communicated, orally and via e-mail, with several customers and business partners of both Battle Foam and Outlaw Miniatures in an attempt to weaken or terminate Battle Foam's and Outlaw Miniatures' business relationships with and expectancies from those third parties.

87.     Defendant intentionally, without just cause or excuse, and with the willful intent to injure Plaintiffs, interfered with Plaintiffs' business expectancies by falsely accusing Plaintiffs of dishonesty and bad faith business practices, which caused a termination of those relationships and expectancies.

88.     Defendant's conduct was improper.

89.     Plaintiffs suffered damage caused by the termination of its business relationships with and expectancies from third-parties. Defendant's willful intent to injure Battle Foam warrants punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.     For damages in an amount to be determined at trial;

B.     Pre- and post-judgment interest;

C.     For punitive damages in an amount to be determined at trial;

D.     In the event judgment is obtained by default, Plaintiff's attorneys' fees in the sum of $5,000 and for court costs expended, plus interest accruing thereon at the statutory rate of 10% per annum from the date of judgment, until paid;

E.     For such other and further relief as the Court may deem just and proper.

## COUNT V
### (Preliminary & Permanent Injunctive Relief)

90.     Plaintiffs incorporates by reference the allegations set forth in paragraphs 1-89.

91.     Defendant has defamed Filip and Battle Foam.

92.     Defendant has placed Filip and Battle Foam in a false light.

93.     Defendant has intentionally interfered with contracts to which Plaintiffs are parties.

94.     Defendant has intentionally interfered with Plaintiffs' business expectancies.

95.     Defendant's tortious conduct has damaged Plaintiffs, including but not limited to, the following:

- loss of long time and potential customers;
- loss of third-party "kickstarter" investors;
- loss of investment capital;
- loss of good will in the miniature war-gaming community'
- loss of a positive business reputation in the miniature war-gaming community; and,
- actual and potential partnerships with other manufacturers in the miniature war-gaming industry.

96.     Any further defamatory and/or tortious conduct would continue to irreparably damage Plaintiffs.

97.     Because of the nature of Defendant's defamatory and tortious conduct and the damage it has caused and thereafter will cause, Plaintiffs have no adequate remedy at law.

98.     A preliminary and permanent injunction prohibiting Defendant from engaging in further defamatory and tortious attacks against Plaintiffs is necessary in order to protect Plaintiffs from suffering irreparable harm.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.     For a preliminary and permanent injunction directing Defendant to cease and desist from further defamatory and tortious attacks against Plaintiffs; and

1          B.    For such other and further relief as the Court deems just under the

2    circumstances.

3        DATED this 9th day of May, 2013.

4                      MAY, POTENZA, BARAN & GILLESPIE, P.C.

5

6                      _____

7                      Devin Sreecharana, Esq.
                  Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**VERIFICATION**

2

3   STATE OF ARIZONA          )
                              ) ss.
4   COUNTY OF MARICOPA        )

5

6        Romeo Filip declares as follows:

7        I am Romeo Filip, a Plaintiff in the lawsuit, <u>Romeo Filip, Battle Foam, LLC, and Outlaw</u>

8   <u>Miniatures LLC v. Nick Hayden et al.</u> filed in Maricopa County Superior Court. I am

9   authorized to make this verification. I have reviewed the Complaint and know the contents

10  thereof. The allegations contained in the Complaint are true in substance and in fact, to the best

11  of my knowledge.

12       I declare under penalty of perjury that the foregoing is true and correct.

13       Executed on ___ th day of May, 2013.

14                                             Romeo Filip

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

# Meat for Meta: Bad Battlefoam Practices

TastyTaste :

- 
- 
- *Pin it*
- 
- 
- 
- Email

If you have been reading this website since the beginning you've known Blood of Kittens has often illuminated some of the worst behavior many in our community have perpetuated.

At times I have gone after Battlefoam for their sometimes ruthless tactics to corner the foam market.

Recently, it seemed like Battlefoam more importantly their owner Romeo has been keeping a decently low profile.



As it turns out, a pattern has developed that would make anyone squeamish dealing with Battlefoam.

It all started a few years ago when Romeo threw a tantrum at NovaOpen because the TO promised the biggest event ever and couldn't deliver. Now that doesn't seem too bad, but when you take into account that Romeo made the TO's mother cry that is saying something!

Then you have the case of Romeo promising a lifetime discount for anyone tattooing Battlefoam on their body. Well one sad individual did such a thing and Romeo denied ever making the offer. So, with email trail in hand the tattooed man got into a haggling argument over the percentage of the discount, with I think a final agreement settling at 30% off.

Then there was last years Adepticon where Romeo threw another tantrum because a random podcast was trying to give a competitors foam away as prize support. Then, the following WargamesCon Romeo tried to change/reduce his prize support after already agreeing to a set amount. This continued to Feasts of Blades where Romeo changed the rules of the game by providing prize support not in the form of bags or foam, but in the form of three-month memberships to the 40k Radio forums a "$30 value". Intentionally, never defining what prize support ever meant. Then there was last years Duelcon where Romeo partnered up with another gentleman to run the event. So, when the Warmachine side of the event fell flat Romeo attempted to fire the partner, somehow forgetting that he was in 50/50.

Now it comes to this year and Romeo is at it again, demanding Adepticon give him an entire ballroom for Battlefoam claiming that since Privateer Press and Flames of War get one he should too. Forgetting that Privateer Press and Flames of War actually pay for their Ballrooms and vendor booths, which unlike Battlefoam only ever provides prize support for space.

It also very curious because Privateer Press and Flames of War make games and those ballrooms are used for you know actual games. So, unless Battlefoam has some sort of foam game I am unaware of I just don't get it.

Finally, Romeo went psychotic tirade on the Infinity forums.

It all started when Romeo complained about being shitty at Infinity on 40k Radio.

That elicited the Corvus Belli forums members to troll Romeo trash talking.

In response Romeo when on (now deleted flame war) the forum threatening to come out and beat the shit out certain board members for their comments.

Then there is the continued foam wars has with Sabol and KR Multicase. Now you wonder why anyone would want to do business with Battlefoam? Well the answer is of course Battlefoam makes an amazing product. At some point though the behavior of the owner should be worth something.

Even when Battlefoam gives out honest prize support there is always a catch, like bags without any foam.

Now Battlefoam as embarked on another adventure with a Kickstarter for a game called Wild West Exodus. Unless you dig deep you would never know that Outlaw Miniatures and Battlefoam were the same thing. Now everything looks legit and product has been building for some time, but with Kickstarters loose rules I wonder if many of those pledges are ever going to see products without foamy "strings attached".

That is the main reason for this post is a warning for anyone considering investing in Wild West Exodus because once bitten by Battlefoam there is no going back.









```
Domain name: BLOODOFKITTENS.COM

Registrant Contact: Nick Hayden
    Whois Privacy Protection Service, Inc.
    Whois Agent ()

    Fax:
    PMB 368, 14150 NE 20th St - F1
    C/O BLOODOFKITTENS.COM
    Bellevue, WA 98007
    US

Administrative Contact:
    Whois Privacy Protection Service, Inc.
```

```
   Whois Agent
(gskhxpmth@whoisprivacyprotect.com)
   +1.4252740657
   Fax: +1.4259744730
   PMB 368, 14150 NE 20th St - F1
   C/O BLOODOFKITTENS.COM
   Bellevue, WA 98007
   US

Technical Contact:
   Whois Privacy Protection Service, Inc.
   Whois Agent
(gskhxpmth@whoisprivacyprotect.com)
   +1.4252740657
   Fax: +1.4259744730
   PMB 368, 14150 NE 20th St - F1
   C/O BLOODOFKITTENS.COM
   Bellevue, WA 98007
   US

Status: Active

Name Servers:
   ns1.bloodofkittens.com
   ns2.bloodofkittens.com
```

# Exhibit B

*Answer 5/8/13 on (al (ES)*

1  D. GILL SPERLEIN (172887)
2  THE LAW OFFICE OF D. GILL SPERLEIN
   345 Grove Street
3  San Francisco, California 94102
   Telephone: (415) 404-6615
4  Facsimile: (415) 404-6616
5  gill@sperleinlaw.com

6  MARC JOHN RANDAZZA (269535)
   6525 W. Warm Springs Road, Suite 100
7  Las Vegas, NV
   Telephone: (888) 667-1113
8  eof@randazza.com

9  Attorneys for Plaintiff

10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA
12                     CONTRA COSTA COUNTY
                       UNLIMITED JURISDICTION
13
                                    C-13-00674
14                              )    CASE NO.:
                                )
15  NICOLAS HAYDEN, an individual,  )   COMPLAINT FOR DECLARATORY
                                )    RELIEF
16      Plaintiff,              )
                                )
17          vs.                 )    JURY TRIAL DEMANDED
                                )
18                              )
19  BATTLE FOAM, LLC, an Arizona  )
    Company, and ROMEO FILIP, an  )        FAX FILING
20  individual,                 )
                                )
21                              )
                                )
22      Defendants.             )
23

24                          INTRODUCTION

25      1.      Plaintiff Nicolas Hayden seeks a declaration under California code of Civil

26  Procedure §1060, that he has not defamed Defendants Battle Foam LLC and Romeo Filip

27

28  ("Defendants"). Because the complained-of statements Plaintiff made in his article about

                                   -1-

                                              COMPLAINT

Defendants, who are public figures, were true, substantially true, or statements of opinion, none of the comments referenced in Defendants' cease and desist letters give rise to a cause of action for defamation.

2.   A present adjudication is necessary to guide Hayden's future actions including his right to engage in speech protected by the California Constitution.

## THE PARTIES

3.   Plaintiff Hayden is an individual and owner and operator of Blood of Kittens Network, a blog about the miniature war-gaming community.  Hayden resides in Pinole, California.

4.   Defendant Battle Foam, LLC is an Arizona corporation.  Battle Foam manufactures custom-cut foam packaging for the transport of miniature war figurines.

5.   Defendant Romeo Filip is the owner and operator of Battle Foam, LLC and resides in Gilbert, Arizona.

## JURISDICTION

6.   It is proper for Plaintiff to pursue this action as an unlimited civil action pursuant to California Civil Code §88, because an action for declaratory relief  is not an action of the type identified as a limited civil action.

7.   Plaintiff is informed and believes and based thereon alleges that at all times relevant to the dispute referenced in this Complaint, Defendant Battle Foam, LLC, was and is doing business in the State of California.

8.   California is the appropriate jurisdiction because Plaintiff resides in California, because the article at issue was published from within California, and because

-2-

COMPLAINT

Defendants willfully transmitted a cease and desist letter to Plaintiff in California, directed at a known California individual, with the successful intent of causing an action (or reaction) in this state.  Therefore, under the California Long-Arm Statute (C.C.P. § 410) and under the Due Process Clause of the United States Constitution, the California Superior Court unlimited jurisdiction is the proper jurisdiction for the resolution of this dispute.

9.     Venue in the Superior Court of California Contra Costa County is proper pursuant to sections 395 and/or 395.5 of the California Code of Civil Procedure.

## FACTS COMMON TO ALL CLAIMS

10.     Blood of Kittens Network is a blog about the miniature war-gaming community.  The blog, owned and operated by Hayden, features news articles and commentary about the miniature war-gaming community and events.

11.     On March 7, 2013, Hayden published an opinion piece entitled "Meat for Meta: Bad Battlefoam Practices" under the pen name TastyTaste. See Exhibit A.  The article consisted of entirely of Hayden's own opinions or to the extent the article stated facts Hayden believed such facts to be true.  Hayden knew such facts to be true through firsthand knowledge or reasonably believed such facts to be true because they came through reliable sources.

12.     Defendant Battle Foam manufactures packaging material for miniature war-gaming figures and sponsors war-gaming tournaments.

-3-

COMPLAINT

13.     On April 4, 2013, Hayden received an April 1, 2013-dated cease and desist letter from Defendants accusing him of making defamatory statements in the article. See Exhibit B.

14.     Defendants accused Plaintiff of making the following statements about Defendant Filip: "physically and verbally threatening potential Battle Foam customers"; "lying to current and potential Battle Foam customers and business partners"; and "consistently defaulting on agreements with current and potential business partners." See Exhibit B.

15.     Defendants accused Plaintiff of making the following statements about Battle Foam, LLC: "lying to current and potential Battle Foam customers and business partners"; and "consistently defaulting on agreements with current and potential business partners."

16.     Defendants demanded that Plaintiff pay $2,500.00 in attorney fees and either post an affidavit to his blog renouncing his earlier comments or present evidence of the truthfulness of his comments. Defendants stated that Hayden did not acquiesce to their demands by 5 p.m. on April 8, 2013, they would file suit.

17.     Plaintiff contends that all of the statements made in the article are opinions or are truthful facts based on Plaintiff's experiences with Defendants, as well as, the experiences of others. Both truth and substantial truth serve as affirmative defenses to a claim of defamation and statements of opinion are not defamatory. Because all of the comments are true, substantially true, or a statement of opinion, the statements Plaintiff made on his blog about Defendants cannot be defamatory.

-4-

18.   Defendants are public figures well known within the miniature war-gaming community.

19.   In defamation actions, limited-purpose public figures are people who have "either voluntarily injected themselves into a particular public controversy, or who have been drawn into such controversies." Nation-wide fame is not necessary for someone to achieve the status of a public figure; rather, for purposes of defamation, it matters if the person is a public figure within the community where he was defamed.

20.   Corporations also can be considered limited-purpose public figures when the controversy involves the product or area in which the corporation markets.

21.   In order to prove defamation, a public figure plaintiff must show that the speaker made the allegedly defamatory statements with actual malice, or with knowledge that it was false or with reckless disregard as to their falsity. Public figures who sue for defamation must establish a probability that they can produce clear and convincing evidence that the speaker made the allegedly defamatory statements with knowledge of their falsity or with reckless disregard of their truth or falsity.

22.   Battle Foam has established itself as the premier packing company in this close-knit and highly competitive industry. Furthermore, Battle Foam has inserted itself into the miniature war-gaming community through sponsorship of tournaments, of which Defendant Filip is a frequent attendee. Filio operates and stars in one of the biggest podcasts for the community, 40kradio and is involved in other gaming podcasts as well. He appears on videos for the wargaming news outlet - Bestofwar.com. Both Battle Foam and Filip are clearly public figures within the community of miniature war-gaming, where

-5-

they competitively market their product. Therefore, Defendants are public figures who must prove, by clear and convincing evidence that Plaintiff acted with actual malice in publishing his article to Blood of Kittens.

23.   The statements contained in Plaintiff's article about public figure Defendants Battle Foam and Filip were true, substantially true, or were pure opinion. Defendants cannot prove by clear and convincing evidence that Plaintiff made any of the statements with actual malice.

### FIRST CAUSE OF ACTION
(Declaratory Judgment)

24.   Plaintiff repeats and incorporates by this reference each and every allegation set forth in the preceding paragraphs.

25.   Battle Foam and Filip claim that Hayden's statements are defamatory and have threatened to bring a lawsuit against Hayden on this basis.

26.   An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends that his statements are not defamatory, whereas Defendants dispute these contentions and contends that the statements are defamatory.

27.   Plaintiff desires a judicial determination of his rights and duties, and a declaration as to whether his statements concerning defendants are defamatory.

28.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights to engage in speech. Hayden's right to engage in protected speech is being harmed by the unsettled state of affairs.

-6-

COMPLAINT

29.    An actual, present, and judiciable controversy has arisen among Hayden, Battle Foam, and Filip concerning Hayden's published statements.

30.    Hayden seeks a declaration from this Court that Hayden's article about Battle Foam and Filip does not constitute defamation.

## PRAYER

WHEREFORE, Plaintiff respectfully seeks the following relief:

a.  A declaration that Hayden's article about Battle Foam and Filip is not defamation;

b.  Costs of litigation and reasonable attorneys fees; and

c.  Such other and further relief as this Court deems just and proper.

Dated: *April 8, 2013*

Respectfully submitted,

by:

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN

MARC J. RANDAZZA
RANDAZZA LEGAL GROUP

Attorneys for Plaintiff

-7-

COMPLAINT

# Exhibit C





These documents are a matter of public record and because lawyers are now involved, I cannot go into as much detail as I would like, but let these documents reflect exactly what this case is about.

Blood of Kittens takes its ability to present hard hitting news and information very importantly, and this site will continue to do so for as long as possible.

I was lucky enough to procure a pro-bono defense, but that didn't stop me from incurring a sizable amount of legal costs. The money I would normally use for the hosting Blood of Kittens has been effected. In order for Blood of Kittens to operate I have to do something I thought I would never need to do, and ask the community for help with donations.

In light of a completely unrelated site take downs, I think it is essential, more than ever, to keep on doing what this site does, be it rumors, news, or blunt commentary about all aspects within our community. So, if you like to support that continuation please donate whatever you can, I don't expect the donations to reach the level to pay back the money I have invested, but anything will help.

Your Donation Amount:

[ 0.00 ]

Your total amount is : 0.00 (Currency: USD)

**Donate**

If by some miracle I get donations exceeding the funds lost, the overage will go to the organization that made it possible for me to get the amazing lawyers defending the site today.

The Online Media Legal Network.

OMLN provides an invaluable legal referral service, with their main goal to find pro-bono or reduce rate lawyers to defend online journalists and bloggers. So, if you don't like Blood of Kittens at least consider donating to them, because defending journalism and freedom of speech is something everyone can get behind.





1  Devin Sreecharana, Esq. (AZ Bar No. 029057)
   **MAY, POTENZA, BARAN & GILLESPIE, P.C.**
2  Chase Tower, Suite 2200
   201 N. Central Avenue
3  Phoenix, AZ  85004-0608
   Telephone:  (602)252-1900
4  Facsimile:  (602)252-1114
   E-mail: devin@maypotenza.com
5
6  Attorney for Plaintiffs



MAY 0 9 2013

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

7              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8                 **IN AND FOR THE COUNTY OF MARICOPA**

9   ROMEO FILIP, a married man, BATTLE     Case No.  CV2013-007123
    FOAM, LLC, an Arizona limited liability
10  company, and OUTLAW MINIATURES,        **CERTIFICATE OF**
    LLC, an Arizona limited liability company,   **COMPULSORY ARBITRATION**
11
12              Plaintiffs,

13  vs.

14
15  NICOLAS HAYDEN and JANE DOE
    HAYDEN, husband and wife; DOE
16  INDIVIDUALS OR ENTITIES 1-10,

17              Defendants.
18

19        Pursuant to Rule 72, Ariz.R.Civ.P., the undersigned certifies that they know the dollar

20  limits and any other limitations set forth by the local rules of practice for Maricopa County

21  Superior Court, and further certifies that this case is not subject to compulsory arbitration as

22  provided by Rules 72 through 76 of the Ariz.R.Civ.P.

23        DATED this 9th day of May, 2013.

24                           MAY, POTENZA, BARAN & GILLESPIE, P.C.

25
26                           _____
                             Devin Sreecharana, Esq.
27                           Attorney for Plaintiffs

28

1

1   Devin Sreecharana, Esq. (AZ Bar No. 029057)
    **MAY, POTENZA, BARAN & GILLESPIE, P.C.**
2   Chase Tower, Suite 2200
    201 N. Central Avenue
3   Phoenix, AZ 85004-0608
    Telephone: (602)252-1900
4   Facsimile: (602)252-1114
    E-mail: devin@maypotenza.com
5
6   Attorney for Plaintiffs

7           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8           **IN AND FOR THE COUNTY OF MARICOPA**

9   ROMEO FILIP, a married man, BATTLE          Case No. CV2013-007123
    FOAM, LLC, an Arizona limited liability
10  company, and OUTLAW MINIATURES,                 **WAIVER OF SERVICE**
    LLC, an Arizona limited liability company,          **OF SUMMONS**
11
12              Plaintiffs,
13
    vs.
14
15  NICOLAS HAYDEN and JANE DOE
    HAYDEN, husband and wife; DOE
16  INDIVIDUALS OR ENTITIES 1-10,
17
                Defendants.
18
19  To:    Devin Sreecharana
20         May, Potenza, Baran & Gillespie, PC
           201 N. Central Avenue, Suite 2200
21         Phoenix, Arizona 85004

22          1.    I acknowledge receipt of your request that, on behalf of my clients Nicolas

23  Hayden and Jane Doe Hayden (collectively, "Hayden"), I waive service of Summons in the

24  action of *Romeo Filip v. Nicolas Hayden, et al.*, which is case number CV2013-007123 in the

25  Superior Court of the State of Arizona in and for the County of Maricopa. I also have received

26  a copy of the Complaint in the action, and a means by which I can return the signed waiver to

27  you without cost to me.

28

                                            1

2.    I, on behalf of Hayden, agree to save the cost of service of a Summons and an additional copy of the Complaint in this lawsuit by not requiring that Hayden be served with judicial process in the manner provided by the Arizona Rules of Civil Procedure.

3.    I, on behalf of Hayden, will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

4.    I understand that a judgment may be entered against Hayden if an Answer or motion under Rule 12 is not served upon you within sixty (60) days after May 29, 2013.

Dated this 29 day of May, 2013.

Marc John Randazza
Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, Nevada 89118
Attorneys for Defendant

## DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS

Rule 4.1 and Rule 4.2 of the Arizona Rules of Civil Procedure require certain parties to cooperate in saving unnecessary costs of service of the summons and the pleading. A defendant located in the United States who, after being notified in an action asked by a plaintiff to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must, within the time specified on the waiver form, serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the compliant and also must file a signed copy of the response with the Court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

2